Case number 3-19-0253, Truck Insurance Exchange and Farmers Group Inc. et al. Appley's and the estate of James Restaino, deceased Appley v. Roger D'Orazio Jr. Appellant. I'm not sure how to pronounce your name, Mr. Gorenberg? Gorenberg, Your Honor. Do you want to present? I am, Your Honor. Thank you. So, I am Ken Gorenberg and I represent the appellant, Roger D'Orazio. In 2004 and 2009, Mr. D'Orazio and his company asked their long-time insurance agent at Farmers, James Restaino, for coverage for third-party claims for economic losses. Mr. Restaino responded that there is no such insurance coverage available in the marketplace. But Mr. Restaino was wrong because, as a matter of fact, there is such a policy. It's called Directors and Officers Insurance, or DNO, that covers a wide variety of economic loss claims by third parties. Relying on Mr. Restaino's misrepresentation, Mr. D'Orazio was without DNO insurance exactly when he needed it most, which is when he sold his company and the buyer sued him for tens of millions of dollars, a loss that would have been and should have been covered by a DNO policy. But the trial court dismissed Mr. D'Orazio's claims under Section 2615, primarily because the court believed that there is no remedy as a matter of law for these misrepresentations. This appeal involves two overarching questions, whether, as I indicated, there is a remedy as a matter of law, and we believe there is. And secondly, whether this case should have been decided at the pleading stage as it was, or whether instead there are fact issues that should go to a jury. And that's what we believe to be the case. So on the first overarching issue, whether there is a remedy, the second amended third party complaint, as well as the prospective third amended third party complaint, stated claims for common law negligence, negligence under the Illinois Insurance Liability Placement Act, negligent misrepresentation, and the Illinois Consumer Fraud and Deceptive Business Practices Act. A lot of the briefing in this court, as well as the briefing and argument below, focused on the Illinois Insurance Placement Liability Act, and in particular, the trial court's misconception and the farmers and Mr. Restaino's arguments that that act somehow prevents a claim and negligence against them. And that is simply not true. The act primarily, as far as duty and the standard of care, has one key effect, which is it provides that an insurance producer or agent like Mr. Restaino is not held to a fiduciary duty. We're not making any fiduciary duty claims. We're claiming negligence. And in fact, the statute expressly confirms that negligence claims are allowed to proceed after the enactment of the statute. You're talking count three, Mr. Gorenberg. Excuse me, Your Honor. Which count are you referring to, Mr. Gorenberg? The counts here, if we're looking at the proposed third amended complaint, the statutory cause of action against Mr. Restaino himself is count three. Correct. And then there is also a common law negligence claim in count four against Mr. Restaino, which also invokes the statute. And then, of course, we also claimed against farmers because of an agency theory. So common law negligence there is count five against farmers. And for negligent misrepresentation against farmers under an agency theory, it's count seven of the third amended complaint. But you're referring right now to the statutory negligence count three claim. Correct, Your Honor. Now, the most significant misrepresentation made by Mr. Restaino himself occurred on March 9th, 2009. At that time, there was actually a meeting where Mr. Restaino sat down with Mr. DeRazio's son, RJ DeRazio, who was then handling day-to-day management of the company. And in that meeting, at RJ DeRazio's request, Mr. Restaino presented a quote for employment practices liability insurance. That was something that RJ DeRazio specifically requested. Now, that quote, and I will explain, first of all, that that quote was never presented in writing to anybody, either of the DeRazios, and no insurance policy was ever presented to them either. Only it was an oral representation by Mr. Restaino that here is this quote for employment practices liability insurance that also included directors and officers liability insurance. And in that meeting, Mr. DeRazio made the specific representation that D&O insurance only covers shareholder lawsuits. And that because the appellant, Mr. DeRazio, was the majority, if not sole shareholder of Collision Revision, his company, it would provide no coverage. D&O insurance would provide no coverage because he would never sue himself. Mr. Restaino also had represented both in that 2009 meeting and in an earlier discussion with the appellant, Roger DeRazio, in 2004, that there is no insurance coverage for third economic loss. Now, all of that is flat false because directors and officers liability insurance does provide this type of coverage. There are also important misrepresentations by farmers itself. So, in addition to an agency theory, we have actual misrepresentations by farmers itself. Among those misrepresentations are, first, that Mr. Restaino was a, quote, elite agent. That's not just a descriptive. That's a capitalized term by farmers in the insurance documents sent to Mr. DeRazio. And they also said that Mr. Restaino had, quote, rigorous training. Well, that was not true because the only training that Mr. Restaino had was in sales techniques and nothing about the scope or substance of insurance coverage. Another misrepresentation actively made by farmers was that Mr. Restaino could provide, quote, business insurance consulting services. Now, this is in writing, in documents sent to Mr. DeRazio and his company. And a third category of misrepresentation by farmers itself is that Mr. Restaino could provide, quote, he could offer insurance professional advice regarding the appropriate insurance products to address their changing needs. And again, that's in writing from farmers to Mr. DeRazio and his company. Now, all of those misrepresentations go directly to the heart of this matter because Mr. DeRazio was relying on professional business insurance advice from Mr. Restaino in making the determination of whether to buy D&O Insurance. And it was Mr. Restaino's misrepresentations about D&O Insurance that led Mr. DeRazio not to have such coverage, as I said, exactly when he needed it. Now, one of the most important cases cited in the briefs and below was the Scopertas case from the Illinois Supreme Court in 2015. And what's very important about that case is two things. First of all, it confirms, as I said, that the Illinois Insurance Liability Placement Act imposes the duties of ordinary negligence that are stated right on their face. And in that respect, accomplished no change in Illinois law. In fact, the Supreme Court in Scopertas cited this court's 1973 opinion in a case called Talbot that described how a duty in negligence can arise through a voluntary undertaking. In other words, whether there is a contract is irrelevant, whether an insurance agent might have more narrow duties under an agency agreement, all of that goes out the window if the agent himself undertook a more specific or broader duty. And in this case, Mr. Rusteno did undertake such a duty to be a trusted insurance advisor. And that was over the course of 30 years. Again, we have all of these representations, including by Farmers itself, that back that up. Now, one of the key things that the defendants, excuse me, the counter defendants, continue to point out in response is that Farmers itself did not offer DNO insurance. We don't dispute that. But here's the thing. Scopertas itself says this. This is a direct quote from the Scopertas opinion at paragraph 39. If an agent's company does not offer the coverage requested, the agent may satisfy the duty by simply notifying the customer that he or she should look elsewhere for the requested coverage. Very, very important. So Mr. Rusteno had an obligation to tell Mr. DeRazio and Collision Revision that because Farmers doesn't offer DNO insurance, they should go elsewhere. But Mr. Rusteno didn't do that. He instead went out and got the quote for DNO insurance from Zurich Insurance Company, which happens to be Farmers' parent. And then he misrepresented what that insurance could cover, leading Mr. DeRazio and Collision that coverage. Now, another important error made by the trial court was in believing that the various statements and representations made by Mr. DeRazio and Farmers were merely opinion rather than fact. But that is not true as a matter of law either for a couple of reasons. First of all, the whole determination of whether a representation is one of statement, excuse me, is one of fact versus opinion is an issue of fact. So it is not for the court to determine as a matter of law on the pleadings. Moreover, there are a number of cases, a long line of cases in Illinois that explain that what may seem like an expression of an opinion actually becomes one of fact based on a couple of things. Most notably, if the speaker holds him or herself out as having some specialized knowledge, which Mr. Rusteno definitely made that sort of representation and Farmers backed that up. And also, if the person hearing these representations, such as Mr. DeRazio, has reason to believe that the person speaking has specialized knowledge. And of course, given this long, trusted relationship over the course of 30 years on insurance, that's exactly what Mr. DeRazio believed. Now, among the cases that explain these propositions, there's even one that actually, if the court were to simply shepherd eyes, the Netuno versus Arbor case cited by the appellees, one would find that since the briefing was completed in this case, the first district decided a case called 21 Christian Conduit Association versus Pioneer Engineering and Environmental Services. That's 2020 LAP 1st, 191868 on September 30th, 2020. And that case provides exactly the authority that I was describing about how a misrepresentation should be considered one as a matter of fact, rather than opinion, based on all these attributes about who is speaking and who is listening and the way that that is beheld. Have you cited that for additional authority? Is it in your briefs? Is it in your statement of cases? That case, Your Honor, came out after our briefs were all filed in this case. Yeah, but you know, motion practice doesn't end after that time. Fair enough, Your Honor. I prefer myself anyway, that you you proceed formally and seeking a citation for additional authority and giving opposing counsel the benefit of that, as opposed to a surprise today. I appreciate that, Your Honor. And certainly, if it becomes important, I'll be happy to make a motion after this, this argument. I apologize for overstepping my bounds today. Well, your point is, you just brought it up, you've decided the importance. So please proceed formally with the citation to ability in my motion. Very well, Your Honor, I understand. I'd like to turn to the second overarching issue, which I've touched on a little bit, which is that there are numerous fact issues in this case. Now, one of the most important is on proximate cause. And that was a big issue that tripped up the trial court. Now, first of all, we can again look to the Illinois Supreme Court in 1996. This is the Connick case, which is a frequently cited case under the Illinois Consumer Fraud Act that holds the court holds in Connick. The proximate cause under the Illinois Consumer Fraud Act is generally a fact issue. That's true here. Another case that's very important, and this was also cited in the in the brief earlier, is the PRM Connect case. That's a federal court case from the Northern District of Illinois in 2016 that explains that if insurance coverage is available, the failure to procure that coverage is a proximate cause or is the proximate cause of an uninsured loss when that uninsured event ultimately occurs. So that's exactly what happened here. And one of the key things that again seemed to trip up the trial court is that the counter defendants brought in, presumably or supposedly under Section 2619, some evidence outside the pleadings. And that is that in 2014, Collision Revision, which is Mr. DeRazio's company, obtained another or sought another quote for DNO insurance, specifically from another insurance agent called the Weiss Agency. First of all, we believe that that is true. Mr. Jordan, I believe your time is up. Thank you, Your Honor. Thank you very much. Mr. Dahl, who's going to argue first? Who's going to argue first? I am, Your Honor. Five minutes. Thank you. May it please the court, counsel. My name is John Dalton and I represent Mr. Restaino through his estate's representative. I'm addressing the Section 2020-2201 claim against Mr. Restaino, farmer's agent. And I'll take five minutes and Mr. Heck will address the remaining claims against the appellees. And he'll take 10 minutes. This case is before the court because Mr. DeRazio wants to make Mr. Restaino defend a claim from the grave, even though that claim can't hold water. His claim is based on Mr. Restaino's supposed duty to place DNO coverage, DNO insurance for Mr. DeRazio and Collision Revision, even though Mr. Restaino was not asked to get coverage for risk arising from the sale of Collision Revision in 2014. All this while appellant had known that DNO coverage was available in 2009, chose not to purchase that coverage. All these facts are alleged in appellant's second amended pleading. And those facts were additionally alleged in the third amendment counterclaim and third party complaint. Reversing the trial court in this case would expand Mr. Restaino's duty and an insurance agent's duty and liability well beyond the language and intent of Section 2201 of the Insurance Liability Placement Act. So the trial court's dismissal of the appellant's case should be affirmed. The limited issue in this case is whether the circuit court abused his discretion in denying Mr. DeRazio leave to amend his pleading. And to file a third amended third party complaint and counterclaim. The record clearly establishes that the circuit court did not abuse its discretion. And this decision should be affirmed, especially given the plaintiff had three opportunities to cure the defective pleadings. The standard review is abuse of discretion here. And what are the defective pleadings? To cure the defective pleadings. What did what changed between the second and the proposed third amended complaint? Effectively, that the main changes are the allegations at paragraph 94 and 96 of the third amendment complaint and additional paragraphs 105 to 108, I believe. And they claim that not specifically in paragraph 96. And you heard Mr. Gorenberg reference that earlier that Mr. Rustino is alleged to have gone out and get a quote for EPLI insurance in 2014, in 2009. And he then made a representation about the additional coverage that was included in the EPLI insurance quote, which was DNO coverage, directors and officers coverage, which Mr. Gorenberg and Mr. DeRazio claims he needed in 2014. Well, at the end of that allegation in paragraph 96, Mr. DeRazio alleges that Mr. Rustino recommended that Collision Revision purchase EPLI because it would cover defense costs if any more claims were made against Collision Revision or its officers and directors. So that information now being in Mr. DeRazio's hands and his failure to request coverage as required under 2201 after that negates Mr. Mr. Rustino's duty. And there's nothing they alleged in either the second or the third amendment complaint that expands that duty. The, so the duty was negated. The duty to procure was negated by the fact that they knew about DNO coverage and they didn't request it. And there was a change in risk in 2013, 14, and they failed to go to Mr. DeRazio or Mr. Rustino, they being Collision Revision. What was the change in risk, Mr. Dalton? The, the sale of Collision Revision first to the group of seven is referenced in the complaint and then to Boyd and there are, and there, there are no allegations that given they were selling the Collision Revision to somebody, either this group of seven or to Boyd, they asked for, there are no allegations that they asked for DNO coverage, but they went to a third party to get a quote for DNO coverage. And they referenced that in the allegations too. That's why these pleadings are insufficient. Mr. DeRazio could never assert a claim given those alleged facts and the court should be affirmed. The trial court should be affirmed. I believe my time is up. Thank you. When you say went to another party, another insurer, which, what are you referring to? Are you referring to the ZURC? No. In, in paragraph 108, it's alleged that the directors and officers of Collision and Insurance. And then they said they couldn't get it. But the important thing is they say they were relying on Mr. Rustino. If they were relying on Mr. Rustino, why did they go to another agency to ask for coverage, but they didn't ask for coverage from Mr. Rustino? Without asking for coverage there, Mr. Rustino had no duty to procure that coverage. Thank you. Thank you. Any questions? Thank you, Mr. John. Thank you. Good afternoon, your honor. May it please the court. My name is Randy Hack. I represent the Farmers Defendants. Those are three insurance exchanges, Farmers Insurance Exchange, Truck Insurance Exchange and Fire Insurance Exchange. Six companies that are owned by the exchanges. And Farmers Group Inc., which is a separate company and separately owned. Your honors, the decision below against from Judge Peterson dismissing all claims against the Farmers Defendants should be affirmed in all respects. His decision was not abuse of discretion. No part of that decision was arbitrary. No part of that decision was unreasonable. No part of that decision was one that a trial judge should or could not make. As a threshold matter, as Mr. Dalton points out, Mr. D'Orazio never alleges that he informed Mr. Rustino or requested coverage for risks that would arise from the sale of collision revision to outsiders. Whatever discussion was had in 2009, Mr. D'Orazio's pleading is quite clear. The sale of collision revision was, in his own words, not on the horizon. An insurance producer is not a guarantor. He's not obliged to predict the future. What he is obliged to do is comply with 2201. The violation, the alleged violation of 2201 is the predicate for the negligent and negligent misrepresentation claims against farmers. It's the predicate for the ICFA claim against farmers, or for at least half of it. And there's no threshold allegation of a violation. So in the first place, there are. You said you were pronouncing an IFCWA claim. Were you using an acronym? Your Honor, could I ask you to say that again? Unfortunately, let's zoom. You said something about some claim, IFCWA claim. Illinois Consumer Fraud and Deceptive Trade Practices Act. I called it ICFA. Yeah, I'm the founder of Americans Against Acronym Abuse. Your Honor, it'll be the last one I use. I'll call it the Consumer Fraud Act if it pleases the court. Thank you. Very well. Second, Your Honors, Judge Peterson was well within his discretion to find that no vicarious liability can be imputed to farmers. Mr. Rustano is an independent contractor. His duties are defined by an agreement, which is in the record before the court. Farmers appointed him to sell farmers insurance and represent the companies. It made no appointment to Mr. Rustano to sell insurance for other companies. It exercised no control over whether he did or didn't sell insurance for other companies. It exercised no control over what he said about insurance available for other companies. Farmers does not, I cannot stress this point enough, does not underwrite insurance for body shops. It does not underwrite directors and officers insurance for body shops. The assertion is he should have recommended a product that farmers does not sell. Farmers accepted no application for such an insurance product. It made no communications with anybody about such an insurance product. It accepted no application. It did no underwriting. It had no involvement whatsoever in a discussion about a product that doesn't sell with an independent contractor who's working on his own account and responding to an insured who says, you know, I don't, do you have any other insurance I might be able to buy? Farmers doesn't sell the insurance that was allegedly spoken about. Can you talk about the relationship? Reliable in those circumstances. Can you talk about the relationship that has been presented regarding Zurich and its relationship with farmers? Pardon me. I did not mean to step on you. Are you done? You're out. I'm done. Right. You know the issue. I do. And I don't blame Mr. Gornberg because he didn't argue this below. Zurich owns no part. I say this with 100% certainty, and the court should understand this with 100% certainty. Zurich owns no part of the farmers insurance exchanges. The farmers insurance exchanges are California reciprocal corporations. They are owned by their shareholders, by policy holders, by policy holders. Those are the people that own the farmers exchanges. Zurich is a foreign stock company. You can find it on the Swiss exchange. Zurich owns no part of farmers. Farmers owns no part of Zurich. There is one contract. There is an agreement between a Zurich subsidiary and the farmers insurance exchanges by which this subsidiary of Zurich provides services. But let's be clear. What is and isn't part of that? There is no agreement between that subsidiary and Mr. Rustaino. Mr. Rustaino is an agent for a listed and defined group of companies, the farmers exchanges, and a few other companies that farmers exchanges own. Again, that umbrella is owned entirely by their shareholders. The very documents that Mr. Gornberg's predecessor filed with this court, you can look at them yourself and read them, Your Honor. Admittedly, corporate diagrams are confusing as heck sometimes. But this one is clear. There is no ownership between the exchanges in Zurich and Zurich in the exchanges. So the notion that Mr. Rustaino was acting for Zurich is false, demonstrably so. Let me finish with my introduction on the ICFA point, because I know that time moves. To summarize, you're saying the agent in this instance changed his relationship from an agent to one of being a broker with fiduciary duties to his client. Short answer, yes. In that case, remember, he was always an independent contract. He had a set of defined obligations to farmers to sell the products that farmers offers, to sell the companies that farmers office, business that is eligible. I'm just reading from the contract that's before the court. There is no policy that farmers office offers to DNO or no DNO policy that farmers offers to body shops. It's not a product farmers sells. It's not a line of business that farmers underwrites. It's not a class of business. It's not eligible to be written. In those circumstances, he was acting as an independent contractor. And if he was working for anybody, he was working for Zurich, for Mr. D'Orazio or somebody or collision revision. But he wasn't acting for farmers. It would turn the principles of vicarious liability into a guarantee to think that an agent for farmers who's speaking about a product that farmers doesn't sell is farmers agent for all purposes. That's not the law. The threshold predicate for the imputation of principal agent liability is the agent is acting on behalf of the principal said differently for the principal's benefit. No. And you're saying that coverage was outside of the principal's capability. I'm sorry. Again, your honor, I have the volume up. You're saying that in this instance, the coverage, the DNO coverage was outside the capability or competency of the principal. It was a product we don't offer. And that's the principal. Yes. Okay. Right. My yellow light went on. I'm going to move forward because we've covered the vicarious liability point in response to the court's questions. The consumer fraud claim that Mr. D'Orazio brings as an individual and on behalf of the supposed class against farmers defendants on the basis of supposed false advertising is what I want to cover now. All of the things that Mr. Gornberg refers to today and the legions of documents that are printed in the complaint, which I think he went and they printed every ad farmers has run for the last few decades and put them in a string site and said, each of these was a promise to me, Mr. D'Orazio. I encourage the court to look at those and to look at them in the context of the Avery decision, the cases that Avery cites and the examples that Avery relies on. Brand advertising statements that we try hard, we work hard, we're hold our insurance in good hands. Nationwide is on your side. Like a good neighbor, State Farm is there. All those statements of that ilk are all aspirational. They are opinions. They are not statements that can be subject to a rigorous true or false dichotomy. That's not what these advertisements are about. They are brand advertising. They are, some courts call them puffery. I prefer to call them sales talk. In Avery recall, the allegation was State Farm didn't tell its insureds that the replacement parts that were going to be installed were categorically inferior. That was the claim. They should have said these parts aren't any good. And the exact corollary here, I saw my light. May I finish this thought? This is on. Thank you. The exact corollary here, the allegation is Mr. Rustano wasn't adequately trained and that wasn't disclosed. Well, that's the exact same allegation that the Supreme Court looked at in Avery. It looked at the other words that State Farm used and it said, this is sales talk. It is not actionable. I asked the court to affirm Judge Peterson's ruling, dismissing all of the farmer's defendants. Thank you, your honors. Do you have a question? I don't know if you know the answer to this. But did Mr. Rustano have other insurance companies that he represented or was farmers the only one? On the pleading motion, your honor, I believe that was directed at me. If it was, I'll take it. Okay, thank you. I have to, I know the answer, but I can't answer. I'm going to answer it based on the pleading. The pleading says that he had the ability to place this Zurich policy that he's allegedly discussed with Mr. D'Orazio. And in fact, the assertion is he recommended that Mr. D'Orazio buy an employment practices liability insurance policy. And the only one of those that's referenced is Zurich. So he clearly had the ability to sell at least for one other person. And bluntly, your honor, the question here is no different than if Mr. Rustano was talking with Mr. D'Orazio about Blue Cross and Blue Shield health insurance. Would somebody think that he was an agent for farmers when he was doing that? I submit not. That's not the law, your honor. Thank you, your honor. Thank you, your honor. So there's one overarching point that I'd like to make in response to both Mr. Dalton and Mr. Hack. And that is that so much of what they just talked about are questions of fact. Questions of fact, which cannot be decided on a 2615 motion, which is what they both filed. And more specifically as to Mr. Dalton's argument on behalf of the estate of Mr. Rustano, there are three key points that I'd like to make. One is Mr. Dalton said that Mr. Rustano was not asked to get coverage for the sale that was occurring in 2014. That's kind of a red herring in two ways. One is that first of all, the request had been made at least in 2009 to get coverage for economic loss claims by third parties. That's a DNO that would have covered the ultimate sale in 2014. The other way that it's a red herring is that asking for DNO coverage in 2014, which is exactly what did happen through the other agent. By that point, it was too late because the nature of DNO insurance like so many other policies is that once the risk has been presented, insurance companies will not issue that policy to cover it. In fact, the quote for DNO insurance in 2014 expressly excluded the sale that was happening at the time. And going back further, there had been this internal insider change of control in 2012 that Mr. Rustano did know about. If we look back to paragraph 107 of the proposed third amended complaint, and Mr. Rustano even told the underwriters at Truck Insurance Exchange about that, that should have alerted them all that that was a DNO risk. Another point that Mr. Dalton made is that back in 2009, Mr. Rustano did recommend purchase of the EPLI policy. That's also a red herring because it misses the important point, which is at the same time, Mr. Rustano specifically recommended against getting DNO insurance because he said it wouldn't provide the coverage. That's exactly what's at issue here. Now as to Mr. Hack's arguments on behalf of farmers, there are two key points that I'd like to make. One is that all of the discussion about authority misses two key points. One, again, is there are fact issues here. The allegations are made of authority. And more importantly, there are allegations of apparent authority. And I already outlined earlier today, the various allegations made about statements made not only by Mr. Rustano, but by farmers itself about the scope of business insurance advice that Mr. Rustano could and would provide. The other point that I'd like to respond to from Mr. Hack is about the various advertising. Mr. Hack described a variety of slogans. Okay, slogans, those are typical advertising. But what I talked about earlier today was not just slogans. Again, they were specific representations specifically about Mr. Rustano and the nature and scope of services that he as a farmer's agent would and could provide to Mr. D'Orazio and Collision Revision. It is that type of misrepresentation. And frankly, the fact that farmers does not sell DNO insurance only exacerbates the problem because they represented to Mr. D'Orazio and his company that this agent, Mr. Rustano could provide for changing business needs, business insurance advice. And they actually couldn't do it unless he went to another company. So for the various reasons we've outlined today, and I can't, again, stress enough that there are so many fact issues here that should not be decided under a 2615 motion. We ask that the court reverse and remand this to go forward at least through discovery and the defendants, counter defendants are welcome to bring these issues up again on summary judgment. Thank you, Mr. Schoenberg. Thank you all for your argument today. Justice Litton. Just a real quick question, please. EP, Employment Practices, that EP insurance, that was purchased, wasn't it? It was not, Your Honor. It neither one was purchased in 09? Right, so in 2009, that would have been a package policy of both employment practices, liability and directors and officers. So Mr. Restaino's advice was kind of at cross purposes with itself because he recommended getting the employment practices liability, but he recommended against getting the directors and officers, but they were part of the same policy. And again, I would stress that the actual quote and the actual policy itself was never provided to Mr. D'Orazio or anyone at Collision Revision for them to understand the scope of this coverage beyond what Mr. Restaino himself represented. Thank you. Thank you, Your Honor. Judge Wright, anything? We will take this matter under advisement, get back to you with a written disposition within a short time. We will now take a short recess for panel change, and I'll see you next week, sir.